## Tomlinson *v.* Hazle Brook Coal Company, Appellant.

Argued December 12, 1934. Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

P. B. Roads, for appellant.

Roger J. Dever, for appellee.

OPINION BY CUNNINGHAM, J., February 1, 1935:

The controversy in this workmen's compensation case had its origin in the filing by the employer of a petition for the termination of a compensation agreement.

While in the course of his employment with the defendant company, as a miner, the claimant was seriously injured on August 2, 1930, by a fall of coal. On August 16th the parties executed, and the board approved, an open agreement for compensation, at the rate of $15 a week, for total disability; payments were made under it until December 15, 1931.

The agreement contained this description of the accident and injury: "While pulling loose coal down chute a piece fell from roof and struck him on the back causing contused back (lumbar region) and contused left arm. Possible fracture of lumbar sacro spine and pelvis."

On January 30, 1932, the coal company filed with the board its petition to have the agreement terminated upon the ground that "claimant's ability to work [had] been restored as of November, 1931." Claimant answered that "Medical testimony [would] prove that [he was] unable to resume work."

After several hearings before a referee, findings of fact were made by him, under date of April 12, 1933, to the effect that claimant then was, and ever since the accident had been, totally disabled. The referee

did not merely dismiss the employer's petition; he went further and made an award of compensation, at the rate of $15 a week, beginning December 15, 1931, to continue, within the limitations of the statute, until claimant's disability should "change in effect." Upon appeal by the employer to the board, the referee's findings of fact, conclusions of law and award were affirmed. The employer then appealed to the court below. In an opinion filed October 30, 1933, that tribunal held that there was competent evidence to sustain the findings of the referee and entered judgment upon the award; the present appeal is by the employer from that judgment.

Upon a review of the entire record, we are not satisfied that the provisions of the statute, as construed by our appellate courts, have been properly applied to the facts of this case — particularly as the referee and board ignored material and uncontroverted facts appearing from the evidence.

All the evidence indicates that claimant was still partially disabled when the referee made his award. The serious and controlling issue, however, relates to the extent of his disability. Before the referee, the evidence consisted of the conflicting opinions of two medical experts and the testimony of several lay witnesses.

Considering first the medical testimony, Dr. C. E. Ervin, who made a physical examination of claimant during the course of the hearings, testified as follows: "Q. Will you tell us your findings? A. He was a patient in the Geisinger Hospital from June 25th to 28th, this year, for the purpose of examination. Found him to be a man well nourished; good musculature; very good station. The chief interest in the examination was that of the lumbar sacro spine, in view of the history that he had a fracture of the lumbar vertebrae. Examination of this part of the

body shows considerable limitation of the spine in the area of the fourth lumbar vertebrae. No gross deformity; no local tenderness; no changes of reflexes in the lower extremities; no evidence of cord injury. Dr. Hawley's report of the X-ray findings was that: 'There is an old crushed fracture of the body of the fourth lumbar vertebrae.' The Wassermann, blood uranalysis and blood count showed nothing of interest. Blood pressure was 130 over 86. I guess that is all. Q. What would you say with respect to his ability to work — perform some kind of work? A. I think the man unquestionably is able to perform some sort of work. Q. You think it would be advisable for him to work? A. Yes, I do. Q. Far as his general condition is concerned? A. I think very advisable, for the simple reason that work will not do his old fracture any harm and it is going to keep him in physical condition to earn his own living in the future."

On the other hand, Dr. G. A. Robinhold, called in behalf of claimant, thus expressed a contrary opinion, at least insofar as laborious work is concerned: "A. This man has a very bad comminuted compression fracture of the fourth lumbar vertebrae, with displacement of a number of fragments considerably anterior. The transverse processes of the third and fourth lumbars of the right side are fractured but not displaced. There is a small fragment broken off the upper edge of the right acetabulum, but no deformity. There is a suggestion of fracture of the left pubis and the ischium. Q. Doctor, whether or not in your opinion this man is permanently totally disabled for laborious work? A. Yes. Q. Is there anything you recommend by the way of surgery to correct this case? A. No, sir."

If the evidence consisted alone of these conflicting expert opinions, we would readily agree with the court below that the award should be sustained; neither

that court nor this one is authorized to weigh the evidence and substitute its independent judgment for that of the compensation authorities, if the record discloses legally competent evidence to sustain their findings of fact.

This case, however, does not turn exclusively upon the opinions of medical experts. No matter what opinion any doctor may have expressed, the record contains competent and uncontradicted evidence demonstrating that the claimant did work in the summer and fall of 1931, and earned wages at the rate of $15 a week. There is additional uncontradicted evidence on the record indicating that he is not totally disabled. A representative of the employer testified that when he was delivering compensation checks in July, 1931, he found claimant "working for Bingaman at Trevorton as a bartender"; that claimant told him he was getting "fifteen dollars a week"; that upon another occasion he found claimant working at the Eagle Hotel in Shamokin "serving drinks, bottling and capping ale, lifting crocks and carrying water to put in the crocks" and lifting cases of ale without any assistance. There was also evidence by this witness and another that in November, 1931, claimant, although wearing a brace, went on a hunting trip, climbed a steep mountain, carried a gun all day, walked a number of miles, helped to change a flat tire, and stood the trip better than other well men in the party.

Moreover, the general superintendent of the coal company testified: "Q. What kind of work in the way of a light form could be given this man — any position? A. He could run the motor, we have scraper engines there, he could run one of them. On the inside he could assist the brattice man and on the outside he could load coal under the breaker or be assistant to the inspector. He could do light laboring

work. A whole lot of jobs around the colliery that have light work. Q. Could be done by a man who would not require any particular unusual strength? A. Yes. Q. In other words, could be done by a man who would be either incapacitated to some extent as far as physical power is concerned or a man who is not strong? A. Yes.''

The coal company had the burden of proof in this proceeding, and we assume it placed this testimony upon the record in good faith and is prepared to employ claimant to perform one of the classifications of work described by its superintendent.

Claimant, when testifying in his own behalf, did not undertake to contradict the testimony to which we have referred in even the slightest particular; nor is there any evidence that he ever made any application to the coal company for work of any kind. The referee in his findings totally ignored all this evidence; the board gave these important facts no consideration, made no findings of its own, and contented itself with affirming those of the referee.

In our opinion, it was the duty of the compensation authorities to consider these uncontroverted facts, along with the opinion evidence of the doctors; a just disposition of the case cannot be made by ignoring them.

When the controversy reached the court below upon the employer's appeal, we think the record disclosed that the referee and board had not performed their duties adequately. It was apparent that the case could not properly be disposed of without having the compensation authorities consider and make findings of fact upon a number of additional issues raised by the evidence; for instance, how long claimant had worked for other employers, and at what wages; whether the coal company is willing to give him employment of the kind indicated by its superintendent;

and generally, upon all the factors and elements from which the extent of claimant's loss of earning power may be ascertained, to the end that a proper award for partial disability may be made. In other words, we think it was a case in which it became the duty of the court below to sustain the employer's exceptions to the findings of fact, reverse the action of the board founded thereon, and, acting under the provisions of the appropriate paragraph of Section 427 of the amendatory Act of June 26, 1919, P. L. 642, 666, remit the record to the board "for further hearing and determination."

Judgment reversed and record remitted to the court below for further proceedings not inconsistent with this opinion.