Olsweski, Appellant, *v*. Lehigh Navigation Coal Company.

Submitted March 5, 1941.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES and HIRT, JJ.

Roger J. Dever, for appellant.

F. S. Riordan, George H. Kaercher and William Jay Turner, for appellee.

OPINION BY CUNNINGHAM, J., June 30, 1941:

It is not controverted in this workmen's compensation case that the direct cause of the death of claimant's husband, Joseph Olsweski, an employee of the defendant company, on March 3, 1937, was "influenza and broncho-pneumonia," which illness began February 23d of that year. The issue, relative to the alleged right of his widow to be compensated for his death, arose under a claim petition filed by her and the employer's answer thereto. In her petition she averred her husband died "as the result of an accident occurring [December 21, 1934] in the course of his employment." The employer answered that his death "was in no way related to [his accidental] injury" but was "brought on by natural causes."

These additional undisputed facts appear of record. More than two years prior to the onset of the fatal influenza and broncho-pneumonia the decedent was accidentally and severely injured in one of the defendant's mines; under an open agreement for compensation for total disability payments were made to him up to the date of his death. The description of the accident and injury as set out in that agreement reads: "Piece of coal slid from 'face' and struck back and neck, resulting in posterior dislocation of 4th cervical vertebra, fracture of 5th with slight displacement. Partial paralysis of both arms."

The referee made and the board affirmed an award to claimant, under Section 307 of the Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended

April 26, 1929, P. L. 829, 77 PS §542, for the remainder of the 300 week period ensuing the accident; upon the employer's appeal to the court below, that tribunal set aside the award and, in effect, entered judgment in its favor; from that judgment the claimant now appeals.

Under the pleadings, and in view of the long period of time which elapsed between the date of the accident and the onset of the influenza, claimant clearly had the burden of establishing, by expert medical testimony, a causal connection between the accident and the death of her husband: *Bunnell v. State Workmen's Insurance Fund et al.*, 124 Pa. Superior Ct. 171, 188 A. 411, and cases there cited.

The standards by which the adequacy of the proofs in cases of this kind is to be measured have been established by a number of decisions of our Supreme Court and of this court. It is not questioned that decedent had a typical case of infection by influenza germs with inflammation spreading down through the bronchial tubes to the lungs.

In *Anderson v. Baxter*, 285 Pa. 443, 447, 132 A. 358, the Supreme Court said: "To be compensable, under the statute, the injury must be the direct or super-inducing cause of the death or disability in question. There is a cardinal difference between lowering vitality and causing pneumonia, which is a germ disease." *Morgan v. Philadelphia & Reading Coal & Iron Co.*, 273 Pa. 255, 116 A. 891, was a case in which an employee died of bronchial pneumonia six weeks after an accidental injury and his physician stated he thought the injuries received were "indirectly responsible" for the pneumonia but admitted it might have come from some other cause. In setting aside an award the Supreme Court said (page 258) : "The testimony did not support the conclusion that the pneumonia was traceable back to the accident as a natural result therefrom. ...... In cases such as this, there must be a probable, direct relation shown between the injury and the dis-

ease resulting in death, otherwise liability would be fixed by surmise."

In *Bunnell v. State Workmen's Insurance Fund et al.,* supra, the deceased employee had suffered a back injury some three years prior to his fatal attack of lobar pneumonia. We there said: "The injury may have contributed to the gradual decline of the deceased at his age; it may have lowered his vitality and resistance; he may have become thereby more susceptible to infection; nevertheless, *there must be a direct expression of professional opinion that deceased's death* from lobar pneumonia *came, or did in fact result, from the remote accidental injury* to his back." (Italics supplied.)

When the medical testimony upon this record is examined in the light of the above principles the only conclusion at which we can arrive is that the judgment in favor of the defendant employer must be affirmed. The sole effort made by claimant to support the burden of proof resting upon her upon this branch of the case was the presentation of a certified copy of the certificate of the death of her husband filed in the Bureau of Vital Statistics. The portion thereof entitled "Medical Certificate of Death" was signed by Dr. J. J. Corrigan who had attended the decedent from the time he left the hospital in February, 1935, until his death. The principal and related causes of death were thus stated: "The principal cause of death and related causes of importance were as follows: Influenza and Bronchopneumonia. Date of onset 2-23-37. Other contributory causes of importance: Fracture cervical vertebrae. Mine accident Cranberry Creek Coal Co., Cranberry Colliery. Date of onset 12-31-34."

Over the objection of counsel for the employer, the referee admitted the certificate "as prima facie evidence." We need not here consider whether it was admissible, for any purpose other than to show the fact and date of death, because the employer called Dr. Corrigan as its only medical witness and the certificate

must, in any event, be read in connection with his oral testimony before the referee.

The decedent was fifty-nine years of age at the time of his death and had been in good health prior to his accidental injury in December, 1934, but subsequent thereto had been unable to do any work. When asked whether his condition had improved between the time of his discharge from the hospital and the attack of influenza, Dr. Corrigan replied: "A. Yes, his general condition improved. When he was discharged from the hospital he was suffering from the debility and exhaustion shock from the accident, and he had an almost complete paralysis of both arms and muscles of the shoulders, upper part of the chest. Q. What change in the condition if any occurred after he got home? A. He was—Oh I would say he had recovered perhaps 75 percent of the use of his arms and his neck and head. He was unable to move his head in any direction when he came home first." The witness further stated that decedent contracted influenza "about two weeks before [his] death" which developed into broncho-pneumonia "probably three or four days later," because the "onset in those cases is usually gradual and don't come on suddenly like it does in the lobar pneumonia." With special reference to his statements in the death certificate he then testified: "Q. ...... In what way did that mine accident contribute to the death or the development of the influenza. A. Well it *lowered his resistance to the disease,* his general condition immediately after the accident and for some months after he was unable to take the proper nourishment and he suffered from the nerve shock of the accident, and it lowered his resistance very much. Q. It didn't contribute in any other way except the lowering of the resistance Doctor? A. *No, I wouldn't say it did.* Q. Influenza is a germ disease isn't it, Doctor? A. Yes. Q. And even healthy robust persons can contract the influenza? A. Oh yes, indeed. Q. And a person in a weakened condition often

withstands exposure to influenza and does not contract it? A. Well they may escape, but they would be *more likely* to develop than a robust person would, a person with lowered resistance certainly couldn't expect to escape contracting a disease from the atmosphere and pass it out of his system the same as a person in good health. Q. Aside from the lowering of the resistance Doctor was there any connection whatever between this injury this man received ...... and the development of the influenza; there was no connection between those except the lowering of the resistance? A. *The lowering of the resistance is the only thing I could say.*" (Italics supplied.)

Upon cross-examination, Dr. Corrigan expressed the opinion that decedent's "lack of activity" had not contributed to his fatal illness as decedent "was up and around the house, and was able to be up around the yard for quite some time," and his bronchial-pneumonia "was of the influenza type due probably to the germ of influenza." In substance, the witness testified decedent had never "fully recovered" from the accident which had been "a terrific shock to [his] system and undermined his condition very much," but that with the assistance of a brace his injured nerves had "regenerated" and he had exceeded expectations with respect to the extent to which he had regained the use of his head and arms.

When all the testimony upon this record is read in the light most favorable to the claimant, and she has been given the benefit of every possible inference therefrom, it is apparent that it falls far short of meeting the test prescribed by our appellate decisions. The most that can be said of the evidence is that the only possible connection shown by it between the accident and decedent's death was the lowering of his vitality and resistance to such an extent that he became an easy prey to any infection. Under all the cases that is not enough to support an award of compensation. To say that a

death from a germ disease is compensable because an accidental injury to the employee's back, which occurred more than two years before the onset of the disease, so lowered his resistance as to render him more susceptible to the germ infection than if he had been robust would be stretching the chain of direct causal connection far beyond the breaking point. The theory upon which the compensation authorities made the award was that the accident had "contributed" to the employee's death, but the referee's finding of fact upon which the award was based demonstrates that the only "contribution" made by the accident toward the death which he could find was the "lowering [of the decedent's] resistance."

That finding reads: "8. From the medical testimony we must find that the injuries sustained in the accident in question contributed to the death of the decedent by lowering his resistance to the disease of influenza, which developed into broncho-pneumonia."

What was said by RHODES, J., speaking for this court in *Parzuhoski v. Pittsburgh Terminal Coal Corp.,* 140 Pa. Superior Ct. 179, 13 A. 2d 879, is equally applicable to the case at bar. There, the deceased employee suffered an accidental back injury on August 26, 1937, had some involvement of the kidneys in December of that year, and in January, 1938, contracted a bad case of the grippe which developed into bronchial pneumonia and caused his death on January 19th, 146 days after the accident. The medical expert, upon whose testimony the claimant relied, testified: "I would say that the direct cause [of death] was pneumonia and that the corroborating cause was a lowered resistance since the date of the accident, and that he could not stand the infection." In reversing a judgment entered upon the award it was said: "It may be conceded that deceased's resistance was lowered by the conditions resulting from the accident, and that he thereby became more susceptible to infectious disease; but 'it cannot be affirmed that whatever lowers a man's vitality is responsible for any

disease which may come upon him': *Anderson v. Baxter et al.,* supra, 285 Pa. 443, at page 448, 132 A. 358, at page 359. The bronchial pneumonia followed the grippe and nephritis from which deceased was suffering. Although bronchial pneumonia is usually termed a secondary disease, there is nothing in the record to indicate that the grippe and nephritis were the result of the accidental injuries which deceased is supposed to have sustained, except that they followed a lowered resistance. The testimony that deceased's lowered resistance was the 'corroborating cause' of his death and rendered him unable to stand the infection is not sufficient. Such testimony does not establish that the alleged injury was the direct or superinducing cause of deceased's death. No one's resistance or vitality remains the same. People who have never suffered an accident contract grippe and bronchial pneumonia, and are often stricken with nephritis. Those who are apparently strong and healthy are frequently afflicted, while the weak and delicate often escape such diseases. 'Lowered resistance' is a vague and relative term, and is insufficient here to establish a causal connection between the alleged accidental injury and deceased's death from bronchial pneumonia. See *McCrosson v. Philadelphia Rapid Transit Co.,* 283 Pa. 492, 494, 495, 129 A. 568."

The case of *Dumbluskey v. P. & R. C. & I. Co.,* 270 Pa. 22, 112 A. 745, cited and relied upon by counsel for claimant, is readily distinguishable. There a miner was bumped by a large stick of lumber causing an abrasion on the side of his body which resulted in traumatic pleurisy culminating in pneumonia. It was held that the testimony in that case supported the finding by the compensation authorities of a "direct connection between the injury to the man and his death." The Dumbluskey case is cited by Mr. Justice STERN, in the opinion written by him in *Parks v. Miller Printing Machine Co.,* 336 Pa. 455, 9 A. 2d 742, (at page 458), as an illustration of the first class of compensable deaths

from pneumonia; namely, "cases where there is an involuntary, unexpected, fortuitous happening which *causes* the disease." (Italics supplied.)

Our conclusion is that the present claimant-appellant failed to meet the burden of proof imposed upon her by the statute; therefore, none of her assignments of error to the action of the court below can be sustained.

Judgment affirmed.