## Kutney *v.* William Penn Colliery Co., Appellant.

Argued December 10, 1941.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*Penrose Hertzler,* with him *E. Mac Troutman,* for appellant.

*Roger J. Dever,* for appellee.

OPINION BY CUNNINGHAM, J., February 28, 1942:

The controversy in this workmen's compensation case had its origin in a petition by the employing coal company for the modification of an open agreement, approved by the board and providing for the payment of compensation to its employee, Steve Kutney, for total disability, into one for partial. The agreement, dated June 7, 1938, was based upon an injury on May 19, 1938, by an accident sustained in the course of his employment as a miner. The description in the agreement of the accident and injury reads: "Sprained sacro iliac region lifting rock." His agreed upon weekly wage was $34.76, and he was paid under the agreement until December 12, 1938, the maximum weekly compensation ($18) prescribed by Section 306(a) of the statute then in force—Act of June 4, 1937, P. L. 1552, 77 PS §511. The agreement has a potential life of 500 weeks at the above weekly rate, and a possibility of additional payments at the rate of $30 per month.

On December 12, 1938, the employer and its insurance carrier, availing themselves of their privilege under Section 413 of the statute, 77 PS §§771-774, reduced the weekly payments to Kutney from $18 to $7.91 upon the ground that they were prepared to prove his disability had so decreased that he then had a weekly earning power of $22.59 as compared with his earning power of $34.76 when injured, and was therefore entitled to receive weekly only 65% of the difference between these amounts—$7.91—in full discharge of their liability to him. In other words, they undertook to prove that his disability did not cause a reduction in his full earning power of more than 35%, or $12.17, for 65% of which they were liable under Section 306(b),

77 PS §512, of the statute. At the same time they filed their petition for a modification of the agreement to that extent, but, so far as the record discloses, did not attach thereto an affidavit of a physician as required by the statute, Section 413, 77 PS §774, in order to make their petition operate as a supersedeas. Our understanding is that payments have continued since December 12, 1938, at the rate of $7.91 per week.

The employee in his answer denied his disability had decreased in any degree and averred he was still "totally unable to do any manual labor due to [his] injury."

The hearing before the referee on August 31, 1939, resulted in an order dismissing the petition for modification and directing payment in accordance with the agreement, which action was affirmed by the board and by the court below; the present appeal is by the employer and carrier from the judgment of the common pleas entered March 3, 1941, upon the agreement and order.

In support of their petition, appellants at the hearing before the referee called three medical experts who had examined the claimant-appellee, Kutney, at various times. Each of them estimated, upon the basis of such examination and the interpretation of X-ray pictures, that the extent of appellee's disability and consequent impairment of his earning power as a result of his injury was 35%.

For present purposes we accept the following summary of the testimony of appellants' experts as contained in the history of the case prepared by their counsel:

"Dr. E. J. Cook, a graduate of the University of Pennsylvania in 1920, who has been engaged in the practice of his profession since that time and who is associated with the Locust Mountain State Hospital, was called by the defendant. He testified that he was the attending physician in this case and after describing the history of the claimant's injury and the treat-

ment received, testified that as of December 12, 1938, the claimant was, in his opinion, only partially disabled reflecting a thirty-five per cent loss of earning power.

"Dr. P. B. Mulligan, a graduate of Jefferson Medical College in 1916, who is roentgenologist to the Locust Mountain and Ashland State Hospitals, was also called by the defendant. He testified that he made X-ray examinations of the claimant on four occasions and after giving the dates of those examinations, testified as to the claimant's condition as he found it, and concluded that as of October, 1938, it was his opinion that the claimant was only partially disabled as a result of his accidental injury which partial disability reflected a thirty-five per cent loss of earning power. He further testified that the claimant is suffering from a '......
tilting of the spine' which is caused by a 'chronic spondylitis' [inflammation of one or more vertebrae] which the claimant may have had for 'a long time.' He definitely stated that the chronic spondylitis and the tilting of the spine were not caused by the accident in question.

"Dr. J. R. Martin, who was also called by the defendant, testified that he has been engaged in the practice of his profession since his graduation from the Jefferson Medical College in 1910 (p. 25a). Since that time he has been specializing in orthopedic surgery for a period of twenty-three years, being associated as chief surgeon with the Elizabethtown State Hospital for Crippled Children and also occupying the chair as professor of Orthopedic Surgery at the Jefferson Medical College (p. 25a). He testified that he saw and examined the claimant on two occasions and after describing the claimant's condition, stated that in his opinion the claimant was suffering only a partial disability reflecting a thirty-five per cent loss of earning power as of the date of both examinations, namely, November 16, 1938, and July 31, 1939."

None of these witnesses was asked whether appellee could, in their opinion, do any kind of work, notwithstanding his physical limitations as described by each; nor was any effort made by appellants to show that appellee could render any service of any kind in or around their mining operation.

Kutney then took the stand and testified he was fifty-four years of age, had gone to school only "about a year," and had worked at "hard laborious work" all his life; that he never had any trouble with his back or side before his accident of May 19, 1938; and that since his injury he had been, and still was, unable to do any work, and at the time of the hearing could "hardly walk."

Dr. William T. Leach, a surgeon in the Ashland State Hospital, was called as an expert witness in his behalf. After testifying to his examination of appellee, supplemented by his examination of X-ray pictures, he continued: "Q. From your examination and findings what percentage of his earning power would you say is destroyed by this accident? A. I would say he is totally disabled. Q. What is wrong with him? A. He has spondylolisthesis involving the 4th and 5th lumbar vertebrae." It was the opinion of the witness that appellee should not try to do anything "in his present physical condition" and was "going to get worse." When asked, upon cross-examination, whether he did not think "this man should endeavor to do something to rehabilitate himself," the witness replied: "I don't believe he is able to. I think he has a very severe injury to his back and I don't believe he is able to do any work." In describing the effect of appellee's injuries the witness said: "On clinical examination this man's back is stiff and he can only bend it 20 degrees forward, 20 degrees lateral motion. No motion in the lumbar spine. A spasm of the spinal muscles which is very pronounced on the right. He complains of numb-

ness in his right leg and a feeling of numbness and pain which goes down to the right knee."

Dr. Warne Haight, specializing in radiology, was also called on behalf of appellee, and after testifying he had X-rayed him on December 31, 1938, stated his plates revealed the following condition in appellee's back: "There is a spondylolisthesis involving the 4th and 5th lumbar vertebrae. This is most evident in the lateral view. The anterior half of the bodies of these vertebrae are compressed, the 5th more so than the 4th. There is a moderate amount of osteo-arthritis present. In the AP stereoscopic view there is a moderate amount of scoliosis [curvature of the spine] with curvature to the right. The 4th lumbar vertebra has slipped moderately to the right as well as anteriorly."

Dr. Milligan was recalled by appellants in rebuttal and when shown the X-rays taken by Dr. Haight testified: "Q. How do they compare with the ones taken by you? A. They looked the same as mine. Q. Did you find the things the doctor referred to here? A. I didn't find any evidence of spondylolisthesis. The distortion is due to the rotation in the lateral curvature and the chronic spondylitis."

From this conflicting medical opinion testimony the referee made the following finding of fact: "As a result of the claimant's accidental injury he is suffering from a spondylolisthesis involving the fourth and fifth lumbar vertebrae. The anterior half of the bodies of these vertebrae are compressed. The fifth more so than the fourth. There is also a moderate amount of scoliosis with curvature to the right. The fourth lumbar vertebra has slipped moderately to the right as well as anteriorly. As a result of these conditions we find that the claimant is *totally disabled.*" (Italics supplied.)

It is clear that in arriving at this finding the referee rejected the testimony of Doctors Cook, Mulligan and Martin and accepted that of Doctors Leach and Haight. Based upon this finding the referee entered an order

dismissing appellants' petition for modification, directing them to pay appellee $18 per week, beginning as of December 13, 1938, (the date upon which they reduced appellee's weekly payments to $7.91), and to continue at that rate, subject to a credit for the aggregate of the weekly payments made at the lower rate. The legal effect of this order was to restore the above agreement as of December 13, 1938, to its original force and vigor.

The board, upon appellants' appeal to it, reviewed the evidence and concluded its opinion with this statement: "We see no reason for disturbing his (the referee's) decision and therefore affirm the findings of fact, conclusions of law and order."

If the board had been content with a mere affirmance of the controlling finding of fact of the referee that would have been the end of the case. It was the exclusive province of the compensation authorities to pass upon the weight and credibility of the testimony of the medical experts; they were acting within their powers in accepting the testimony of Doctors Leach and Haight and rejecting that of appellants' experts. Neither the court below nor this court could have set aside the finding, as written by the referee and affirmed by the board, because it is clear there was substantial and competent evidence upon the record sustaining it. The board, however, introduced an unnecessary complication into this case by saying:

"The burden was on the defendant to establish the change in the claimant's disability. Although the defendant's witnesses expressed the opinion that the disability had been reduced, they did not venture to state that the claimant was able to do any work.

"We are of the opinion that the referee did not err in determining that the defendant failed to meet the burden placed upon it by the Workmen's Compensation Act."

The court below also questioned the sufficiency of

appellants' proofs in this language: "An additional question which appears in this case is as to the burden of proof as to the total disability of the claimant. The defendant has not shown that the claimant is able to do any kind of work either on a part time or full time basis."

The referee had made no finding that appellants had not met the burden of proof specifically imposed upon them by the statute, 77 PS §774. His finding was not based upon the weakness of the testimony presented by appellants but upon the strength of the opposing testimony on behalf of appellee. The distinction between arriving at a conclusion against a petitioner upon the ground that his evidence is so insufficient that the evidence on behalf of the respondent need not be considered, and arriving at that conclusion because of the strength of the evidence of the opposing party, is too clear to need elaboration. In the first situation the petitioner is defeated because of the insufficiency of his proofs, but in the second by reason of the weight and credibility of his opponent's evidence.

By reason of the above quoted excerpt from the opinion of the board, appellants took what they call a protective appeal to the common pleas and then presented to the board, under Section 426 of the statute, 77 PS §871, a petition for a rehearing and the recalling of the record from the common pleas in order to afford them an opportunity to supplement the testimony of their medical experts. The explanation given by counsel in their petition of their failure to elicit from their experts an opinion as to the ability of the appellee "to do any work" was that they felt an "inference" to that effect arose from the statements of their witnesses that appellee had "only a thirty-five per cent partial disability." Attached to the petition were affidavits from each of their medical witnesses that in their respective professional opinions appellee "is able to return to and perform light work generally," and that his "return

to work will be beneficial to him." The prayer of the petition was that appellants be granted a rehearing for the purpose of enabling them to recall their experts and have each of them testify to his opinion that appellee is able to do light work generally.

The board on July 19, 1940, refused the petition without assigning any reason for such action. The appeal proceeded to argument in the common pleas and resulted in the entry of a judgment by that court in favor of the appellee in the sum of $7,646.75. The alleged abuse of discretion by the board in refusing the petition for a rehearing is raised by the sixth assignment of error and the second paragraph of the statement of questions involved.

The contention of counsel for appellants upon this phase of the case is that the board erred: (1) In placing upon them "an unwarranted, arbitrary, and unreasonable burden of proof;" and (2) in refusing to afford them an opportunity to supply the deficiencies in their proofs pointed out by the board.

We do not agree either with counsel for appellants or with the board. The question whether the earning power of an injured employee has been wholly or only partially destroyed (and if the latter, to what extent) is one of fact. Many things, some of which are prescribed by the statute, must be taken into consideration in each individual case. Here, appellants, having admitted in their agreement that appellee was totally disabled as the immediate result of his injuries, and by their conduct having admitted that this total disability continued for a period of at least seven months, sought to procure a modification of the agreement into one for a partial disability not exceeding 35% reduction in earning power. The controversy raised by their petition for a rehearing requires an examination into the quantum and quality of evidence essential to meet the burden assumed by them in seeking this modification of their agreement.

Appellants' position, as we understand it, is that an inference arose out of the testimony of their experts that appellee was able to do light work generally and that this inference, coupled with the presumption referred to in a number of decisions that "such work is available," entitled them to a modification of their agreement. If that question had been properly before the board, uncomplicated by the application for a rehearing, we think its conclusion that appellants had failed to meet the burden placed upon them by our workmen's compensation act would have to be affirmed.

Too much reliance is placed by counsel for appellants upon inferences and presumptions. Such matters tend to obscure the merits—the practical aspects and realities—of the issue. In presenting their case before the referee, they took the position that all they needed to do in support of their petition was to have several medical and X-ray experts express their professional opinions that appellee was no longer totally, but only 35%, physically disabled. No effort was made to show that he was in fact, or even in the opinion of the experts, able to perform any work of any kind in or around a colliery, or any work elsewhere for which he was fitted by education or experience. This conception of their burden is too narrow.

The statutory provision relative to compensation for partial disability, Section 306 (b), 77 PS §512, is that for disability partial in character the compensation shall be "sixty-five percentum of the difference between the wages of the injured employee ...... and the earning power of the employee thereafter, ...... but not for more than four hundred weeks." A further provision of the section reads: "In cases of partial disability, the actual earnings of an employe, after the date of injury, may, along with other evidence, be received as evidence of the extent of his earning power, but if such employee has no such earnings, the referee may, in the interest of justice, fix such earning power

as shall be *reasonable,* having due regard to the *character of his previous employment,* and the nature of his injury and his partial disability." (Italics supplied.)

Counsel for appellants rely upon the general language found in such cases as *Consona v. R. E. Coulborne & Co. et al.,* 104 Pa. Superior Ct. 170, 158 A. 300, and *Babcock v. Babcock & Wilcox Co. et al.,* 137 Pa. Superior Ct. 517, 9 A. 2d 492, disassociated from the factual situations appearing from the record in those cases and indicating the ability of the employee in each to work and the offers of employment made by the employer.

In each of those cases we quoted the following from the note in 33 A. L. R. p. 122: "If the workman is proved able to do light work in general, it may be presumed that such work is available; but if the injury has left the workman a 'nondescript' in the labor market, unfitted to do even light work of a general character, but fitted to do 'odd' jobs not generally obtainable, it may be presumed that there is no work available for him, even though he attempted to find such. It may be said then, as to the latter situation, that the courts have proceeded upon some such theory as this,—if the workman is left a nondescript, prima facie, he is unable to obtain suitable employment, and so long as this presumption remains not overturned the workman is entitled to compensation as for total incapacity."

Speaking in the Consona case relative to the evidence of the extent of the employee's disability and the burden upon the employer we also said: " . . . . . . This man is unable to work inside and his physical limitations render him incapable of steadily working on the outside. It is a matter of common knowledge that there is a general disinclination on the part of employers to give work to cripples. *If suitable work was available to this man with his limitations, it was incumbent upon the appellant to show that fact.* There was no attempt

to assume this burden." (Italics supplied.)

We are not to be understood as holding that it is the duty of the employer to show in every case of this kind that work which the employee is able to do is available and has been offered to him, but the present employer would have had a much stronger case if such facts had been shown. In the Babcock and other cases there was evidence that employment had been tendered and refused. See also *Tomlinson v. Hazle Brook Coal Co.,* 116 Pa. Superior Ct. 128, 133, 176 A. 853.

If the referee had dismissed the petition upon the ground that when appellants' evidence is taken at its face value it is insufficient to meet the burden of proof assumed by them, we think, as already indicated, such a finding could be sustained. On the other hand, we also think the board should have afforded appellants an opportunity to supply the deficiencies in their proofs by granting their petition for a rehearing. We are not persuaded, however, that its refusal was such a gross abuse of its discretion as to justify a reversal of the judgment. The situation was of appellants' own making.

Being of opinion that the order dismissing the petition is supported by sufficient competent testimony upon the part of the appellee, and having in mind that when appellants are prepared at any time hereafter to prove (to the extent herein indicated) that they are entitled to a modification of the agreement, they have a right, under the statute, to file another petition, we have concluded to affirm the judgment with certain modifications.

We are unable to ascertain from the record how the amount of the judgment as entered—$7,646.75—was arrived at. As Section 306(a) of the Act of 1937, (unlike the previous statute) contains no specification of a maximum amount as the limit of the liability of the employer, our opinion in *Graham v. Hillman Coal and Coke Co.,* 122 Pa. Superior Ct. 579, 186 A. 400, prescribing the manner in which judgments should be

entered, cannot be literally applied in the present case. We here have the case of an open agreement for the payment of compensation for total disability which is subject to the provisions of Sections 427, 428, 429, and 430, of the amendatory Act of 1937, 77 PS §§878, 921, 934, 951, 952, and 971. It is impossible, however, to ascertain "the total amount of compensation stated in the agreement," as contemplated by Section 428, 77 PS §921. Moreover, the agreement contains the following provision: "This agreement is intended to comply with the provisions of the Workmen's Compensation Act insofar as the act may be determined to be constitutional. In the event that any provision of the act shall be declared unconstitutional, this agreement shall be revised to correspond to such determination."

Appellants were not parties to the case of *Rich Hill Coal Company et al. v. Bashore*, 334 Pa. 449, 7 A. 2d 302, but in view of what is there said at page 461, and in view of the provisions of Section 306(a), as in effect prior to the approval of the Act of 1937, we think the judgment should be modified, upon the return of the record in this case to the court below, into a judgment in the maximum amount of $6,500, and then liquidated to the date of the return of the record, giving appellants credit for the payments made by that time. This will give the parties a new starting point, and, in our opinion, afford protection to the appellee for whatever may subsequently develop.

Judgment modified and as modified affirmed.