Thomas *v.* Susquehanna Collieries Company, Appellant.

Argued December 12, 1941.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

162

*Henry A. Gordon,* for appellant.

*Roger J. Dever,* for appellee.

OPINION BY CUNNINGHAM, J., February 28, 1942:

This is another workmen's compensation case in which the appellant-employer unsuccessfully sought to have an unappealed from award of compensation for total disability modified into one for partial, upon a 25% disability basis. By this appeal we are asked to reverse the unanimous conclusions of the referee, board, and court below. The judgment will be affirmed.

The underlying facts are not in dispute; the only factual controversy arises out of "hair-splitting" differences in the professional opinions expressed by the respective medical experts of the parties.

An examination of the record discloses these basic facts. The employee, James Thomas, had been in the employ of the appellant coal company as a miner for some years prior to March 16, 1936, the date of his admittedly accidental injury. He testified he was then about fifty-eight years of age, "was a strong man," and had worked regularly. Following the hearing upon his claim-petition, filed November 16, 1936, the referee made, inter alia, these findings of fact:

"On March 16, 1936, the claimant while in the course of his employment for the defendant company was struck on the right leg by a piece of sheet iron and sustained a cut from which an infection set in and later erysipelas developed. The claimant has been totally disabled from that date, ...... as the result of [that] untoward happening.''

An award for total disability was accordingly made on January 23, 1937, at the rate of $15 per week from March 23, 1936, to continue, within the limitations of the statute, until disability changed or ceased. The employer did not appeal from that award. Payments were made under it up to February 15, 1938, when, as

we understand the record, the weekly payments were reduced to $6.92, upon the theory that appellant was prepared to prove that so much of the employee's disability as it was responsible for had decreased to such an extent that it did not affect his earning power more than $10.64 per week—thereby reducing its liability to 65% of that amount, or $6.92. Appellee's weekly wage rate at the time of his injury was $42.54.

Appellant promptly filed its petition, under the second paragraph of Section 413 of the Workmen's Compensation Act of June 2, 1915, P. L. 736, as reenacted and amended by the Act of June 4, 1937, P. L. 1552, 77 PS §772, for a modification of the award of January 23, 1937, into an award for partial disability calculated upon a 25% disability basis. Appellee answered that he was still "totally disabled as a result of the injury sustained."

When the matter came on for hearing before a referee it was not disputed that appellee's physical condition was worse than it had been at the time of the original hearing. Appellant did not undertake to show that appellee had any earning power whatever, but sought modification upon the theory that not more than 25% of his conceded total disability was attributable to the leg injury for which it was liable—the remainder being due, as it asserted, to a preexisting "marked pulmonary involvement from coal dust deposits as a result of his occupation." Doctor R. B. Bast, who had attended appellee ever since the accident, conceded he had a preexisting, but not disabling, asthmatic condition, but expressed his positive professional opinion that this lung condition had been so aggravated by the accidental leg injury and resulting infection as to cause total disability.

As a result of his consideration of all the testimony, the referee made, inter alia, these findings:

"4. The claimant has a scar over the tibia approximately three fingers in length and a little wider than

the width of a thumb. The right foot is edematosed, the thigh and calf are atrophied and the patellar reflexes are very slow. He has harsh breathing over all parts of the chest. He also has an asthmatic condition of the chest and his heart sounds are rather weak.

"5. We find that the accidental injury suffered by the claimant on March 16, 1936, was a *contributory* factor in bringing about the conditions from which the claimant is suffering and which now totally disable him." (Italics supplied.)

An order was entered dismissing the petition for modification and directing the employer to pay such additional amounts as would be due under the award as originally entered down to July 13, 1938, and to continue, within the limitations of the statute, at the rate of $15 per week, until disability changed or ceased.

The board, upon the employer's appeal to it, affirmed the findings of fact, conclusions of law and order, of the referee; the court below entered judgment upon the award; the present appeal is from that judgment.

Our only question of law is whether the findings adopted by the board are supported by substantial competent evidence.

The argument in behalf of appellant seems to overlook several important principles of law applicable to this case. As early as 1919, it was decided by the Supreme Court in *Clark v. Lehigh Valley Coal Co.*, 264 Pa. 529, 107 A. 858, that the fact an employee had an ailment which rendered him more susceptible to the effects of an accidental injury than an entirely healthy person would have been does not defeat his right to compensation. A list of cases in which compensation was allowed for the aggravation of a preexisting chronic ailment by an external accident will be found under the second classification in *Royko v. Logan Coal Co. et al.*, 146 Pa. Superior Ct. 449, 22 A. 2d 434.

Again, the employee did not have the burden of proof here, as asserted in appellant's brief. Appellant's

failure to appeal from the original award and its making of payments thereunder for more than a year amounted to an admission that appellee had been totally disabled by his leg injury for a period of approximately two years. When appellant, under such circumstances, undertook to disassociate appellee's leg injury from his lung condition and assign 25% of his disability to the former and 75% to the latter, and forthwith reduced his compensation accordingly, it assumed a heavy burden of proof. In support of its petition appellant called Doctors C. H. Weimer, Guy Robinhold and G. M. Simmonds. The following question to and answer by Doctor Simmonds illustrates the tenor of their testimony: "Q. Doctor, as a result of this examination do you have any opinion as to whether this man has a disability due to the injury to his right lower extremity? A. As a result of this examination it is my opinion this patient is about twenty-five per cent disabled in the use of his right lower extremity due to the original injury and secondary infection. He is totally incapacitated from work due to his general constitutional debility which is no doubt caused by his advanced age and marked pulmonary involvement from coal dust deposits as a result of his occupation and which is not in any way related to the original injury."

The question of burden of proof is not directly involved upon this appeal. The findings of the compensation authorities are not based upon the weakness of the evidence for appellant, but upon the weight, credibility, and reasonableness of the testimony of appellee's opposing expert, Doctor Bast. See *Kutney v. William Penn Colliery Co.*, 148 Pa. Superior Ct. 114, 25 A. 2d 92.

As the medical opinion testimony on the record is conflicting, it was within the exclusive province of the referee and board to pass upon its weight and credibility and decide which of the two medical opinions presented it would adopt.

The following excerpts from Doctor Bast's testimony indicate the basis of his professional opinion: "By Mr. Dever (counsel for appellee). Q. Is this man in any condition to do any form of labor now? A. No. Q. Is this man as well now as he was at the time of the last hearing? A. No. Q. He is worse instead of better? A. Worse. Q. What are the things wrong with this man now, doctor, physically? A. Physically, this man has sustained an injury to the right leg; there is a scar over the tibia approximately three fingers in length and a little wider than the width of the thumb; the foot is edematosed, the thigh and calf are atrophied and the patellar reflexes are very slow. This man weighed on March 5, 1938, 131 pounds, and on June 11, 116 pounds; ...... pulse 108; chest, sunken rather deeply; he has harsh breathing over all parts of the chest; face, cheeks are flushed and the patient is emaciated; ...... tongue, coated; ears show deafness; he also has an asthmatic condition of the chest; heart sounds rather weak. Q. Doctor, do you feel this man's general condition is markedly contributed to by this accident? A. Yes, sir. Q. Explain how you come to that conclusion? A. In the first place this man suffered erysipelas, and this infection gradually weakened him. Q. You attribute his present disability to this accident? A. I think that was the *beginning* of it. Q. Is it your opinion this accident has rendered this man totally disabled? A. Yes. By Mr. Gordon (counsel for appellant): ...... Q. From the time you saw him until today, he showed improvement following his injury? A. What do you mean by that? Q. From the time that you first saw him on March 16th, [1936] up until the time of the hearing before the referee he had shown an improvement in his condition? A. Oh yes, there was a bad infection there which cleared up. Q. What is the condition of his lungs? A. Worse now than they were then. Q. Do you know what the condition of the lungs were at the time you

first saw him as compared to what they were before Referee Schrager on January 12, 1937? A. He has had asthma all along; of course, as that goes along in age it gradually gets worse. Q. He had that when he was first hurt, didn't he? A. Yes. Q. But the injuries have healed have they not? A. The injuries have healed but the muscles have atrophied. Q. The healing of the actual injury of the leg in your opinion left this atrophied condition? A. Yes, and besides the atrophy you have an edematosed condition of the leg due to the blood vessel condition. Q. The blood vessels were injured by this accident to such an extent that they are the primary cause of that foot condition? A. The blood vessels being dilated is due to the infection; he only has edema of the one leg. Q. The infection was an erysipelas infection? A. Yes, and abscesses following the erysipelas, and that in turn caused this dilation of the blood vessels and consequent edematosed condition of the foot. Q. How much of his disability do you believe is due to the result of the injury to the leg *disassociated* from the lung condition? A. I don't think you can completely disassociate them; *if he did not have this injury* he probably would still be working...... Q. You think it (the disability) is all due to the leg condition? A. Not all, but of course it weakened him that bad it weakened his whole system. Q. In your opinion that brought on some acceleration of some lung condition, due to his weakened physical condition? A. Yes, from that severe infection. Q. Is there any disability in this man due primarily to the injury to the foot aside from his lung condition? A. Yes, his leg is atrophied now. Q. How much of his disability is attributable to that leg condition? A. The leg is atrophied, it is atrophied that much *this man can hardly walk*. Q. Would there be a total disability in your opinion from the condition of the leg if he had no lung condition? A. The wasting that he has, whether the wasting comes from the lung or the leg is pretty hard

to say. Q. The man has two conditions which you find, either of which or both are disabling? A. Both of them. Q. Which of these conditions is the most disabling, the lung or the leg condition? A. About fifty, fifty. Q. Fifty, fifty, you think? A. Yes. ...... Q. Has the lung condition progressed more than it naturally would? A. *Yes.* Q. To what extent? A. One can't say how fast those things will go. ...... Q. But it really comes back to the question are you able to definitely fix the disability due to the condition of the leg? A. Yes. Q. He is totally disabled due to the condition of the leg? A. Yes. By Mr. Dever: Q. Summing this whole thing up, is it your opinion this man is unable to work because of the accident? A. Yes, I think he is." (Italics supplied.)

No extended review of decided cases is necessary to demonstrate that this testimony, if accepted by the compensation authorities, as it was, amply supports their conclusion that appellee's preexisting lung condition was so contributed to, i. e. aggravated by, the accidental injury to his leg that he has been totally disabled ever since the injury was sustained as a result of that injury. See *Dobash v. Jeddo-Highland Coal Co.,* 141 Pa. Superior Ct. 62, 14 A. 2d 842, and *Swingle v. Mill Creek Coal Co.,* 116 Pa. Superior Ct. 97, 176 A. 828.

Nor does Doctor Bast's testimony relative to the general weakening of claimant's condition following the leg injury bring this case within the non-compensable class of cases including, *Olsweski v. Lehigh Nav. Coal Co.,* 145 Pa. Superior Ct. 193, 20 A. 2d 874, and authorities therein cited (among which is *Anderson v. Baxter,* 285 Pa. 443, 132 A. 358, relied upon by defendant) where death was due to the subsequent contraction of a germ disease to which decedent was rendered more susceptible because of "lowered resistance" attributable to an accidental injury. Here the infection in-

volved, erysipelas, was the *direct* result of the leg injury.

Furthermore, the testimony as to the acceleration of the lung condition as a result of the leg injury is not too general or uncertain, as argued in behalf of appellant. What we said in *Bartlinski v. Northumberland Mining Co.*, 117 Pa. Superior Ct. 437, 177 A. 518, which was a "death" case, applies equally here: "All that is necessary under the Workmen's Compensation Act, is that the testimony establish that the injury aggravated the condition and accelerated death, but *no opinion or definite prophecy as to how much the death has been hastened or accelerated has yet been required.*" (Italics supplied.)

We call attention to the fact that the judgment has not been entered in accordance with the method of procedure prescribed in *Graham v. Hillman Coal & Coke Company*, 122 Pa. Superior Ct. 579, 186 A. 400. It should be so modified as to conform with that opinion. The assignments of error are severally dismissed.

Judgment affirmed.