Faustino SANTIAGO, Employee-Appellant,

v.

FOOD CRAFTS, INC., Employer-Appellee.

FOOD CRAFTS, INC., Employer-Appellant,

v.

Faustino SANTIAGO, Employee-Appellee.

Superior Court of Delaware,
New Castle.

Dec. 8, 1971.

Oliver V. Suddard, Wilmington, for employee.

Alfred M. Isaacs, Flanzer & Isaacs, Wilmington, for employer.

OPINION

O'HARA, Judge.

This is an appeal by Faustino Santiago (claimant) from a decision of the Industri-

al Accident Board (Board) terminating claimant's total disability compensation under a Board approved settlement dated November 7, 1969. Food Crafts, Inc., claimant's employer, has filed a cross-appeal contesting the allowance for attorney fees awarded to claimant by the Board in the proceedings below, and appeals that portion of the Board's decision holding claimant entitled to compensation from October 18, 1969 to December 4, 1969.

Claimant on February 14, 1969, sustained injury as a result of a fall while working as a kitchen helper in the employ of Food Crafts, Inc. in the cafeteria at the General Motors Boxwood Road Plant. As a consequence of this injury, claimant entered into a compensation agreement with Food Crafts' compensation carrier, American & Foreign Insurance Co., which was approved by the Board on April 23, 1969. Pursuant to the aforementioned agreement, compensation was received for a period approximating four weeks.

Thereafter, the claimant resumed work on a steady basis until October 17, 1969, at which time he again sustained injury as he was attempting to lift a carton of milk into a cafeteria style dispenser. Accordingly a second compensation agreement providing for total disability compensation was agreed to on November 7, 1969 and approved by the Board on December 3, 1969. The following day claimant returned to work, but was unable to continue with the job after one day because of continuous back pain. Since that date, according to the findings of fact rendered by the Board, claimant has been unable to obtain employment "due to his back pain, lack of industrial skills, and inability to speak English".

On January 23, 1970, Food Crafts, Inc., petitioned the Board to set aside the agreement last entered into for the reason that the February and October injuries were not causally related. Specifically, it is contended that at the time of the agreement between claimant and employer's compensation carrier regarding disability payments, the latter, through no neglect of their own, were unaware of the existence of a congenital abnormality in claimant's spine. It is argued that such an abnormality would predispose claimant toward back injuries of the type sustained and would constitute a reasonable alternative hypothesis for the genesis of claimant's injury which would not require compensating claimant in the absence of a showing that claimant's lifting the milk cartons involved "unusual exertion" on his part. Milowicki v. Post and Paddock, Inc., 260 A.2d 430 (Del.Supr.1969). Essentially the employer maintains that its carrier relied upon the fact that the February, 1969, and October, 1969, accidents were related in entering into a compensation agreement with claimant. It now contends that it was not then nor presently under any legal obligation to compensate claimant because the two episodes were entirely unrelated (other than that each independently may be causally related to a preexisting weakness); and that under the Milowicki rule there was no October 17, 1969 accident. Claimant's position is that the two accidents are related and that the October accident is a recurrence of the February accident. Accordingly claimant argues that the employer is responsible for claimant's inability to obtain employment since December 4, 1969.

A hearing was held before the Board on October 7, 1970, to adjudicate the respective positions of the parties. The Board at that time refused to set aside the agreement entered into by the parties by application of Milowicki rule, but held that the agreement will only remain in force to cover temporary disability from October 18, 1969 to December 4, 1969 (the date claimant returned to work). The rationale for the Board's decision was premised on the finding of fact that "the present continued disability of the claimant does not relate to these industrial accidents but to degenerative congenital anomaly of his spine". It is from this decision and these findings that the claimant presently appeals.

At the onset this Court acknowledges the discretionary limitation placed upon its judicial authority when considering an appeal from the Industrial Accident Board. The Superior Court does not sit as a trier of fact with authority to weigh the evidence, determine questions of credibility, and make its own factual findings and conclusions. The sole function of the Superior Court on such an appeal is to determine whether or not there was substantial competent evidence in the record to support the findings of the Board. Johnson v. Chrysler Corporation, 213 A.2d 64 (Del. Supr.1965).

The substance of the testimony presented by Food Crafts and relied upon by the Board may be fairly summarized as follows. Dr. I. Favel Chavin, an orthopedic surgeon who examined claimant closely following his first accident, testified that on the basis of his neurological examination claimant's problem was muscular. Dr. Chavin further testified that under normal circumstances one experiencing a muscular problem such as diagnosed for claimant might be expected to return to normal activities within six weeks. On this basis, Dr. Chavin concluded that in the absence of claimant's congenital anomaly, the two injuries sustained by claimant would not be causally related. With regard to the claimant's condition, Dr. Chavin conceded a preexisting physical weakness, and testified on a hypothetical basis that a congenital abnormality makes one more susceptible to muscle strain. On cross-examination it was brought out that due to broken appointments no follow-up examination occurred after February, 1969.

Dr. Arthur J. McKelvie, an osteopathic physician, examined claimant following his second injury on October 23, 1969, and on five subsequent occasions during November, 1969. Dr. McKelvie diagnosed claimant's injury as muscle strain, and stated that a person with claimant's type of back injury would ordinarily recover from four to six weeks of injury. Claimant did not return to Dr. McKelvie for treatment after November 21, 1969.

Additional testimony was heard from one John Courchaine, claimant's superior and manager of food services and vending, to the effect that claimant had registered no complaints with respect to back pains with the employer's medical department during the interim between injuries although other medical problems were brought to the attention of that department. Finally, there is the testimony of a Mr. Leddy, claims manager for the compensation carrier, stating that the carrier was unaware of the congenital anomaly at the time the November 7, 1969 agreement with claimant was entered into.

■ It is now well settled that an employer or an insurer seeking to reopen an award of workmen's compensation or otherwise to secure a diminution or discontinuance of benefits has the burden of demonstrating the facts relied upon. 101 C.J. S. Workmen's Compensation § 860; Manno v. Tri-State Engineering Co., 159 Pa. Super. 267, 48 A.2d 122 (1946). Pursuant to this general rule of law it is encumbent upon one seeking to attribute disability to a cause unrelated to accidental injury within the course of employment to establish alternative theories of causation. Ginter v. Westinghouse Electric & Mfg. Corp., 11 N.J.Super. 338, 78 A.2d 403 (1951). In the opinion of the Court the employer here has not satisfied, by substantial record evidence, this burden imposed by the law, and accordingly we must find that the Board exceeded the limits of its discretion by terminating claimant's compensation effective December 4, 1969.

The Court notes that the only new development subsequent to the November compensation agreement with claimant was the fact that employer's carrier became cognizant of the congenital anomaly of claimant's spine. Prior to this time and with knowledge of all other facts appearing upon the record, employer and carrier indi-

cated their satisfaction that claimant's accidents were causally related to each other and voluntarily allowed claimant total disability benefits. The employer is thus asking the Court to conclude that the introduction of this one new fact justifies the Board's determination that a new cause intervened requiring the termination of claimant's benefits despite the "continued disability" of claimant.

Employer's method of proof is to demonstrate the existence of a preexisting weakness of claimant's spine through expert medical testimony, to suggest hypothetically a relationship between the defect and claimant's disability, and finally to introduce medical opinion tending to negate the once acceptable interrelationship between claimant's accidents. This indirect evidentiary method, founded on speculation, does not overcome the presumption of continued disability arising out of the initial accident. In fact, as the Court in Channing v. Payton, 152 Okl. 153, 4 P.2d 1 (1931) has stated:

> ". . . a certain physical condition admitted to exist and admitted to be attributable to a certain accidental injury ought not to be said to be attributable to any other cause because the condition continues longer than would ordinarily be expected from the nature of the injury, unless there is evidence reasonably tending to establish such other cause."

The employer has elicited medical testimony from experts demonstrating the existence of a congenital weakness on claimant's spine. The sole fact that an employee has an ailment which renders him more susceptible to the effect of an accidental injury than a normal individual has been held not to defeat a claimant's right to compensation. Thomas v. Susquehanna Collieries Co., 148 Pa.Super. 161, 25 A.2d 98 (1942). A fortiori this fact alone would not defeat an award of compensation already granted to claimant.

The employer, therefore, relies heavily in support of his hypothesis on the inferences drawn from the testimony of his two medical witnesses to the effect that claimant's problem was muscular and under normal conditions would be expected to correct itself within six weeks. This Court finds, however, that medical testimony of this type based upon expected rates of recovery, where no follow-up examination has occurred, is no more than speculation and accordingly insufficient to sustain the Board's decision. Channing v. Payton, supra. The general rule in Delaware in accord with authorities elsewhere with respect to medical testimony is that, as to such testimony, "a fact is not proved by a showing of its possibility, no matter how strong that showing is". Larson, Workmen's Compensation, Vol. 3, p. 286; General Motors Corporation v. Freeman, 3 Storey 74, 164 A.2d 686 (1960).

Employer has introduced other evidence such as medical and attendance records. The inferences that might be drawn from such proof are so numerous and contradictory that they lend little weight to employer's argument even in conjunction with the medical testimony heard. After reviewing all this evidence the Court finds that the Board's decision must be reversed, and disability payments continued until such time as employer may adduce substantial evidence that claimant's disability arising from the October, 1969 accident has ceased. Because claimant has prevailed upon the merits, that part of the Board's order allowing attorney fees is affirmed.

It is so ordered.